434 So.2d 578 (1983)
Robert R. DULANEY
v.
The TRAVELERS INSURANCE COMPANY and National Union Fire Insurance Company.
No. 82 CA 0950.
Court of Appeal of Louisiana, First Circuit.
June 28, 1983.
*579 Robert B. Butler, III, Houma, for plaintiff and appellant.
Philip J. McMahon, Houma, for defendant and appellee, The Travelers Ins. Co.
Louis Thad Toups, Thibodaux, for defendant and appellee, National Union Fire Insurance Co. and Kajun Maintenance Co., Inc.
Before LOTTINGER, COLE and CARTER, JJ.
LOTTINGER, Judge.
This is a slip and fall case. Plaintiff, Robert R. Dulaney, brought suit against Franklin Cavalier, Sr., the president and major stockholder of Cavalier and Sons Supermarket, Inc., The Travelers Insurance Company (Travelers), the insurer for Cavalier and Sons Supermarket, Inc. and its *580 agents and employees, and Kajun Maintenance Company, Inc. (Kajun) and its insurer National Union Fire Insurance Company (National Union). National Union and Kajun filed third party claims against Mr. Cavalier and Travelers alleging the execution of a hold-harmless clause in a lease agreement. Travelers filed a third-party claim against Kajun alleging Kajun's negligence for the accident. The only claims still extant are plaintiff's against Mr. Cavalier and Travelers.[1] From a trial court judgment dismissing plaintiff's suit, plaintiff appeals.

FACTS
In the early afternoon on August 30, 1981, Robert Dulaney drove his car to Cavalier and Sons Supermarket, owned by Franklin Cavalier, for the purpose of buying gas.
On that day the supermarket was in the last stages of some construction work done in the parking area. A new 8,000 gallon gas tank had been installed underground approximately 20-25 feet away from the gas pumps in an area that was then shelled. After the installation, a two to four foot layer of dirt had been left on top of the tank "to settle." The unfinished area was roped off on the day of the accident.
Because the concrete parking lot sloped in both directions towards the gas pumps, water would accumulate there. Mr. Cavalier had had a trench dug running perpendicularly from the pumps to the street to aid in drainage. The trench, a one-inch deep sloping depression, is about a foot wide and begins at the spot where plaintiff says he fell.
It had rained the day before the accident, according to testimony. When plaintiff had stopped next to the pumps he began walking to the store in order to pay for the gas in advance. Plaintiff then said that he noticed a pile of dirt (the dirt over the tank) and considered walking around the other side of his car to avoid any possible mud on the ground. Looking on the ground for any lumps of dirt or mud and seeing none, Mr. Dulaney then proceeded to walk around the back of his car and fell quickly as he did so.
Instead of walking into the store to tell the attendant of his fall, the plaintiff returned home because of a nauseous feeling and a pain in his arm. Plaintiff noticed a considerable amount of mud on his pants after the fall. Some two weeks later plaintiff returned to the store and discovered the drainage depression.
Mr. Dulaney suffered a broken arm as a result of the fall which resulted in lost wages and an estimated permanent disability of 20% in the arm.

TRIAL COURT
The trial court found that plaintiff failed to prove that the gas pump area presented a dangerous condition. It said that a thin layer of dust moistened by a previous rain was to be expected on a gas station's grounds which bordered a highway and shell road. Thus, Mr. Cavalier was not negligent.
The court further found that the drainage depression was not a premise defect so as to visit liability on Mr. Cavalier under La.Civ.Code art. 2317 because it did not create an unreasonable risk of injury. Plaintiff's suit was therefore dismissed.

SPECIFICATION OF ERROR
The plaintiff-appellant maintains that the trial court erred in finding defendants-appellees free of negligence and that the pump area was not a premise defect. He asks for a reversal of these findings and an award of damages.

ISSUES

NEGLIGENCE OF DEFENDANTS
The plaintiff-appellant argues essentially that the trial court erred when it applied *581 the law to the facts. We will address the negligence issue first.
The facts, as described above, are essentially not in dispute. Mr. Dulaney slipped on a layer of mud which he later discovered had accumulated in a one inch deep drainage depression.
Plaintiff-appellant seeks to place this set of circumstances under the traditional "slip and fall" situation. Under "slip and fall" jurisprudence, a proprietor of a business establishment owes a duty to his patrons to exercise due care to keep the premises in a reasonably safe condition; this duty includes the performing of reasonable precautionary measures to keep traveled areas free of foreign substances. Once a plaintiff shows that he slipped, fell, and was injured due to a dangerous condition, the burden shifts to the defendant-proprietor to exculpate himself from presumed negligence. Kavlich v. Kramer, 315 So.2d 282 (La.1975); Sanders v. Stutes, 400 So.2d 1159 (La.App. 1st Cir.1981).
The trial court held that a "thin layer of dust ... moistened by a previous rain" (in common usage, mud) found on a self-service gasoline station's grounds which are bordered by a shell road and a highway was to be expected, i.e., that it was not a "foreign substance." Hence the layer of mud was not a dangerous condition presenting an unreasonable risk of harm.
The court compared the present situation to cases where the slipperiness of grounds was found to be excusable. In Miller v. Smith, 391 So.2d 1263 (La.App. 1st Cir. 1980), affirmed 402 So.2d 688 (La.1981), a dance floor, intended to be somewhat slippery, was not shown to be so much so as to constitute a hazard. In Beuche v. Alvin Roys, Inc., 348 So.2d 731 (La.App. 1st Cir. 1977), that a steam room floor was wet was held to be expected. And in Sanders v. Stutes, supra, outdoor carpeting at a Putt-Putt course, wet because of rain, did not present an unreasonably unsafe condition.
The presence of some mud is to be expected on a station's premises; the accumulation of mud, however, in a drainage trench, albeit a shallow one, presents a different situation. The store owner himself said on deposition that when it rained, water would drain down by the gas pumps, and then drain off; as a result, "... muddy water was draining off and you are going to get some settlement from it; I'm not talking about half inch or two inches of mud, just a film of mud, something that would be slippery." (emphasis added)
Plaintiff testified that immediately prior to his fall he had looked down at the ground and had seen no sign of any depression, that it had appeared to be a flat surface; plaintiff was the only witness to his fall. Whether the mud that accumulated in the depression came from the mud piled over the newly installed gas tank or from normal road dust, it is undisputed that a residue would develop in the drainage depression and to a lesser degree in the surrounding area, and that the defendant knew this.
While we agree that the presence of some mud on a paved surface is unavoidable at a location such as defendant's store, the known tendency of the surface by the pump area (specifically the depression) to accumulate a measure of slippery mud after rain gives rise to a duty to keep the area clear of such a residue by the taking of reasonable steps. The mud here was not a "foreign substance" (such as a banana peel in a supermarket) but we are of the opinion the accumulation is a dangerous condition presenting an unreasonable risk of harm. A patron does not expect a flat-looking surface colored approximately the same as the surrounding area (mud-colored) to give way underfoot.
Defendants-appellees maintain that the drainage depression's utility outweighed the risk and magnitude of harm. Cavalier explained that the trench was dug to drain off standing water that would accumulate after a rain. This is a laudable goal. In trying to eradicate the problem of standing water, however, the station owner created another. Such a substitution, though well-intentioned, does not change the dangerous character of the mud-filled depression. The risk that a patron, like Mr. Dulaney, would *582 slip and fall on a layer of mud in the depression and severely injure himself outweighs the benefit of drainage.
Mr. Cavalier stated both at trial and on deposition that he tried to keep the pump area "as clean as possible." But when asked how often he cleaned the area, Cavalier stated that "we may go three or four days or a week, and it depends on the circumstances." He did not say that he regularly cleaned after a rain, when the problem of accumulation of mud admittedly arose. Nor did he say that he had cleaned the area on the day of the accident. Mr. Cavalier has therefore failed to prove that he used due care to make the area reasonably safe.
We therefore find that defendants-appellees are liable for the injuries suffered by Mr. Dulaney.

NEGLIGENCE OF PLAINTIFF/COMPARATIVE NEGLIGENCE
Defendants-appellees assert that should we make the above finding and reverse the trial court, then plaintiff-appellant's recovery should be reduced by 100%, the amount of negligence said to be attributable to him.
Since this accident occurred on August 30, 1981, La.Civ.Code art. 2323 as amended by Act 431 of 1979 applies. Therefore, if Mr. Dulaney is found to be contributorily negligent, the amount of damages recoverable by him will be reduced by the percentage of negligence attributable to him.
The Second Circuit, in Frain v. State Farm Insurance Company, 421 So.2d 1169 (La.App. 2nd Cir.1982), quoted and adopted Professor Johnson's analysis of the effect of comparative negligence on Louisiana tort law contained in the article Comparative Negligence and the Duty/Risk Analysis, 40 La.L.Rev. 319. In the article, the professor states:
"For this purpose, tort cases may be divided into three broad categories: (a) those in which a defendant's duty extends to the protection of a plaintiff against his own carelessness; (b) those in which defendant is not liable because the plaintiff's conduct has produced a situation for which the law should not require a reasonably prudent person to prepare and respond; and (c) those that fall in neither category, in which the victim's fault and the defendant's fault may each be weighed in the balance." (40 La.L.Rev. at 333).
The upshot of the article and the opinion in Frain, supra, is that in type (a) and type (b) cases contributory negligence (and thus comparative negligence) is not applicable. This conclusion seems proper given the statutory language of La.Civ. Code art. 2323 and prior jurisprudence. See Rue v. State Department of Highways, 372 So.2d 1197 (La.1979); Callais v. Allstate Insurance Co., 334 So.2d 692 (La.1975).
In the usual "slip and fall" case, where a patron slips on a foreign substance on the floor of a store where displays are maintained, the plaintiff is exonerated of his carelessness because his attention is presumed to be attracted to the advertised goods on the shelves. Kavlich v. Kramer, supra. Conversely, patrons in parking lot areas are charged with the duty of using reasonable care for their own safety, including observing and avoiding obvious hazards. Bolin v. National Tea Company, 359 So.2d 690 (La.App. 1st Cir.1978), writ denied 362 So.2d 577 (La.1978).
Generally then, slip and fall cases occurring in display areas would fall under type (a) where the defendant's duty extends to the protection of a plaintiff against his own carelessness; cases where patrons slip and fall on store premises other than in display areas would tend to fall under type (c) where the victim's fault and the defendant's fault are compared.
We believe in the present case, where a patron slipped and fell in a self-service gas pump area in the parking lot of a small store, that Mr. Dulaney was charged with the duty to see and avoid visible hazards. A person intending to use a gas pump is not subject to the visual clamor *583 found in most retail stores and therefore should not be distracted from obvious dangers. The defendant's duty here did not extend to protecting Mr. Dulaney from his own carelessness.
We do not find, however, that the plaintiff breached his duty to use due care for his own safety. He stated that when he saw a pile of dirt some distance from the pumps he looked at the ground for any lumps of dirt or mud. Seeing none, and also observing an apparently flat surface, he began to walk around his car to the store. If, as the defendant admitted, a residue of mud would be left in the pump area after a rain, then the color of the depression (where the accumulation was) would not differ from the adjacent concrete (where a thinner film of mud was left). Mr. Dulaney testified that he had never noticed the depression on his previous trips to the store, and the evidence preponderates that this was his first visit since construction of it. Under these circumstances, we find plaintiff-appellant guilty of 0% negligence.
Since we find that negligence is present on the defendant's part, it is unnecessary to address the strict liability issue. Kent v. Gulf States Utilities Company, 418 So.2d 493, 498 (La.1982).

DAMAGES
The defendants-appellees are thus liable for the total amount of Mr. Dulaney's damages.
The medical expenses were proven to be $2,368.20 and are uncontested.
Mr. Dulaney was employed as an electronics technician at the time he was injured. His hourly wage rate was $10.30 an hour. As a result of his injury, he was unable to work for approximately 17 weeks.
Calculating Mr. Dulaney's average weekly wages for the two month period prior to the accident and the two month period after he returned to work, we arrive at the figure of $988.38. If Mr. Dulaney had earned this figure for the 17 weeks he missed, as the evidence preponderates that he would, his lost earnings would total $16,802.46. We believe this figure to accurately represent Mr. Dulaney's lost wages.
As proof of general damages for pain, suffering and disability, plaintiff-appellant testified that he experienced much pain in his arm after the fall. He wore a plaster cast for almost two months, during which time he took prescribed pain medication and experienced difficulty in sleeping. A small splint was placed on the broken arm for about a month.
Dr. Richard Landry, the treating physician and an orthopedic surgeon, estimated that plaintiff would suffer a 20% permanent disability in his right arm as a result of the fracture of the right distal radius and ulna. He stated however, that he believed plaintiff's work activity would be minimally restricted. Plaintiff said that he has trouble using certain tools with his right arm.
Dr. Landry stated that plaintiff's pain had subsided when he was declared fit to return to work in December of 1981. Plaintiff said that he still experiences some pain in his arm when the weather changes or when he sleeps in a certain position.
Considering these circumstances, we feel that an award of $20,000.00 will adequately compensate plaintiff for his pain, suffering and disability, past and future.[2]
For the above and foregoing reasons, the judgment of the trial court is reversed. There will be judgment herein in favor of plaintiff, Robert P. Dulaney, and against defendants, Franklin Cavalier, Sr. and The Travelers Insurance Company, in solido, for $39,170.66, with legal interest from date of judicial demand until paid. The expert witness fee of Dr. Richard Landry, set at *584 $250.00, is cast as costs of court. All costs of these proceedings and those of the lower court are to be paid by defendants.
REVERSED AND RENDERED.
NOTES
[1] On appeal, plaintiff-appellant only complains about the judgment dismissing Franklin Cavalier, Sr. and Travelers. Hence, he has abandoned any claims against National Union and Kajun. Travelers did not answer the appeal nor take an appeal itself and further makes no mention of its third-party claim against Kajun; that claim too is therefore abandoned.
[2] While damage awards in other cases are not controlling, they may be referred to for guidance. See Kling v. Collins, 407 So.2d 478 (La. App. 1st Cir.1981), where a $15,000.00 award was approved for a plaintiff with a fractured wrist and residual traumatic neurosis, and Tucker v. Lirette, 413 So.2d 557 (La.App. 1st Cir.1982), where plaintiff was awarded $20,000.00 for a fractured wrist, with pain lasting for a month, and 15-20% permanent disability.