540 So.2d 406 (1989)
Dwayne BERGERON and wife, Brenda Bergeron
v.
K-MART CORPORATION.
No. CA 87 1634.
Court of Appeal of Louisiana, First Circuit.
February 28, 1989.
Concurring in Part and Dissenting in Part March 7, 1989.
Rehearing Denied April 19, 1989.
Writs Denied June 2, 1989.
*407 William H. Dunckleman, Houma, for plaintiffs and appellantsDwayne and Brenda Bergeron.
Rodney A. Seydel, Jr. and Fred Haygood, New Orleans, for defendant and appelleeK Mart Corp.
Before CARTER, LANIER and LeBLANC, JJ.
LANIER, Judge.
This is a suit for damages in tort by a husband and wife alleging the husband slipped and fell in a self-service store. The wife sought to recover for loss of consortium, and the husband sought damages for his injuries. The case was tried before a jury which found the husband 40% at fault and the store 60% at fault. The husband's damages were fixed at $126,000, and the wife's damages at $10,000. Judgment was rendered on the jury verdict awarding the husband $75,600 and the wife $6,000. The husband and wife took this devolutive appeal.

FACTS
On Sunday, November 3, 1985, Dwayne and Brenda Bergeron went to the K-Mart Corporation (K-Mart) store in Houma, Louisiana, to shop. While shopping in the cosmetics aisle of the store, they stopped to look at cosmetic bags on one of the shelves. After several minutes, Mrs. Bergeron, who was pushing a shopping cart, turned and started to walk down the aisle. Mr. Bergeron remained behind to examine the bags more closely. After several steps, Mrs. Bergeron pushed her basket through something slippery on the floor and started to slip. She was able to prevent herself from falling by grabbing onto her cart. She then turned to warn her husband, who was a few feet behind her, of the spill on the floor, but, before she could warn him, he slipped and fell to the floor. The fall resulted in injuries to Mr. Bergeron's head and neck.

JURY INSTRUCTION

(Assignment of Error Number 4)
The Bergerons contend the trial judge erred when he failed to charge the jury that a "[p]laintiff is not obligated to work in substantial pain or which would worsen his physical condition." The omission of this instruction was not objected to by the Bergerons at trial. La.C.C.P. art. 1793(C) states:
A party may not assign as error the giving or the failure to give an instruction *408 unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection. If he objects prior to the time the jury retires, he shall be given an opportunity to make the objection out of the hearing of the jury.
Because the Bergerons failed to timely object to the omission of this instruction, they cannot now raise this objection on appeal. Lee v. K-Mart Corporation, 483 So.2d 609 (La.App. 1st Cir.1985), writ denied, 484 So.2d 661 (La.1986).
This assignment of error is without merit.

COMPARATIVE NEGLIGENCE OF MR. BERGERON

(Assignment of Error Number 1)
The jury found Mr. Bergeron 40% at fault. K-Mart did not appeal. Therefore, the finding that K-Mart was guilty of fault is final. The only issue is whether Mr. Bergeron was comparatively negligent. The Bergerons contend that the jury erred in finding Mr. Bergeron 40% at fault.
Comparative negligence is conduct which falls below the standard of care to which one should perform for one's protection. It is determined by reasonableness of behavior under the circumstances. Dawson v. State, Department of Corrections, 452 So.2d 357 (La.App. 1st Cir.1984). Comparative negligence is an affirmative defense that must be specially pleaded. Defendant bears the burden of proving comparative negligence by a preponderance of the evidence. Wilkinson v. Hartford Accident and Indemnity Company, 411 So.2d 22 (La.1982); Marshall v. Beno Truck Equipment, Inc., 481 So.2d 1022 (La.App. 1st Cir.1985), writ denied, 482 So.2d 620 (La.1986).
The Bergerons contend that Mr. Bergeron's conduct did not fall below the standard required of a self-service store customer. Therefore, no comparative negligence should be assessed against him. Generally, a pedestrian has a duty to see that which should be seen; he is not required to look for hidden dangers but he is bound to observe his course to see if his pathway is clear and is held to have seen those obstructions in his pathway which would be discovered by a reasonably prudent person exercising ordinary care under the circumstances. Dunaway v. Rester Refrigeration Service, Inc., 428 So.2d 1064 (La.App. 1st Cir.), writs denied, 433 So.2d 1056, 1057 (La.1983). However, in a self-service store, a multitude of items are displayed upon shelving along the aisles which entice a customer to focus his eyes upon the displays rather than on his pathway. Therefore, in a self-service store, a patron has a diminished duty to see that which should be seen because his attention is presumed to be attracted to the advertised goods on the shelves. See Kavlich v. Kramer, 315 So.2d 282 (La.1975); Dulaney v. Travelers Insurance Company, 434 So. 2d 578 (La.App. 1st Cir.1983); Guy v. Kroger Company, 204 So.2d 790 (La.App. 2nd Cir.1967).
The only people who witnessed the fall were Mr. and Mrs. Bergeron. Their testimony shows that before Mr. Bergeron fell he was looking at merchandise on the store shelves. Mr. Bergeron gave the following testimony at the trial:
Well just before I slipped I was looking at a make-up bag that my wife had showed me that she wanted to get for our sisters-in-law. And while I was looking at the bag, she moved on. And I looked at the bag and looked at a few things and I put the bag back down. And when I turned around to walk towards her, I heard my name and saw her start to form [sic] and hearing her say watch. But halfway through watch, I was down on the floor.
Mrs. Bergeron also testified that before her husband fell he was looking at cosmetic bags and not the floor. Two employees of K-Mart did not witness Mr. Bergeron's fall but saw the spill on the floor after the fall. They testified that the spill was clearly visible. There was no evidence to show that Mr. Bergeron saw the spill before he fell. Mr. Bergeron testified that before he *409 fell he did not see anything on the floor. However, after his fall, he saw a puddle of clear liquid that was the same color as the floor. Mrs. Bergeron testified that before Mr. Bergeron fell she pushed her buggy through the spill and almost slipped herself. She stated she tried to warn her husband about the spill, but, before she could warn him, he had already fallen.
A jury's factual findings will not be disturbed on appeal in the absence of manifest error. Motton v. Travelers Insurance Company, 484 So.2d 816 (La.App. 1st Cir. 1986); Varnado v. Continental Insurance Company, 446 So.2d 1343 (La.App. 1st Cir. 1984). After reviewing the evidence, we conclude that the jury manifestly erred in finding Mr. Bergeron negligent. Mr. Bergeron was looking at cosmetic bags on the store shelves just before he slipped and injured himself. Therefore, he had a diminished duty to see that which should have been seen. Given the testimony, he obviously did not see the spill on the floor before he slipped in it. Under the particular facts of this case, Mr. Bergeron did not breach his diminished duty and, therefore, was not negligent.
This assignment of error has merit.

JURY INSTRUCTION

(Assignment of Error Number 2)
The Bergerons contend the trial court erred in failing to give their requested jury charge on the increased duty of care owed by owners or operators of self-service stores and that this error caused the jury to find Mr. Bergeron comparatively negligent. Because we have found that the jury was manifestly erroneous in finding Mr. Bergeron negligent and have reversed this factual determination, this assignment of error is now moot.

QUANTUM

(Assignment of Error Number 3)
The Bergerons contend that the jury erred in assessing damages. They assert that the awards made for general damages and past and future loss of wages are "grossly inadequate."
The interrogatories returned by the jury awarding Mr. Bergeron damages itemized his award as follows:

Dwayne Bergeron
 a) Past and future
 medical expenses $ 26,000
 ________
 b) Past and future
 physical pain and
 suffering $ 25,000
 ________
 c) Past and future
 mental pain and
 anguish $ 10,000
 ________
 d) Past and future
 disability and disfigurement $ 25,000
 ________
 e) Past and future
 loss of wages $ 40,000
 ________
 TOTAL $126,000
 --------

The proper standard for appellate review of a trial court's award of damages is set forth in Reck v. Stevens, 373 So.2d 498, 501 (La.1979), as follows:
Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive.
. . . .
Thus, the initial inquiry must always be directed at whether the trier court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's "much discretion," La.Civ.C. art. 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, ... or insufficient,.... Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco [v. Winston *410 Industries, Inc., 341 So.2d 332 (La. 1977)] for purposes of then determining what would be an appropriate award for the present case.
In the initial determination of excessiveness or insufficiency, an examination of prior awards has a limited functionif indeed the facts and circumstances of the prior awards are closely similar to the present. The prior awards may serve as an aid in this determination only where, on an articulated basis, the present award is shown to be greatly disproportionate to past awards (not selected past awards, but the mass of them) for (truly) "similar" injuries,....
However, absent an initial determination that the trial court's very great discretion in the award of general damages has been abused under the facts of this case, the reviewing court should not disturb the trier's award. [Citations omitted.]
[Footnote omitted.]

General Damages for Pain, Suffering, Disability and Disfigurement
After Mr. Bergeron fell in K-Mart, he got up and left the store to sit in his truck while his wife made their purchases. Thereafter, he and Mrs. Bergeron went to a local Piccadilly Cafeteria to eat lunch. While eating, Mr. Bergeron became ill, so they went home. After arriving home, Mr. Bergeron became very sick, and his speech was slurred, so Mrs. Bergeron called an ambulance and he was transported to the hospital where he stayed for 15 days. While in the hospital, Mr. Bergeron underwent a CAT scan and myelogram. The myelogram indicated a herniated disc at C-3, C-4 and C-5. Mr. Bergeron was allowed to return home for two days. He was readmitted into the hospital for an anterior cervical discectomy and fusion which was performed on November 27, 1986. This surgery involved only the C-4 and C-5 herniated disc. This hospital stay lasted approximately three weeks.
On February 26, 1986, Mr. Bergeron underwent a second anterior cervical discectomy and fusion. This second surgery involved the C-3 level.
According to Dr. William Kinnard, the physician who performed the operations, Mr. Bergeron's recovery from the two surgeries were routine and the surgeries were successful. Dr. Kinnard released Mr. Bergeron on June 12, 1986. He assigned a 30% disability to Mr. Bergeron's body as a whole. Dr. Chris Cenac, an orthopedic and spinal surgeon, who examined Mr. Bergeron twice after his operations, assigned a 20-25% disability.
Mr. Bergeron testified that the second surgery seemed to help some of his problems, but he still has pain in the back and side of his neck and between his shoulder blades. As a result of the accident, he started seeing a psychiatrist, Dr. Harold Conrad, on April 29, 1986. He was seeing Dr. Conrad at the time of trial and was taking medication prescribed by him.
After carefully reviewing all of the evidence, we conclude that the jury's award of $60,000 for general damages to Mr. Bergeron falls within the range of discretion allowed to it. The award is in the lower end of the range based on the facts of the case, but it is not inadequate. See, for example, Wolfshohl v. Boudreaux, 482 So. 2d 954 (La.App. 3rd Cir.1986).

Loss of Wages
Mr. Bergeron was 34 years old at the time of the accident and was a gauger. As a gauger, he performed minor maintenance and checked the gauges on approximately nine wells. He was required to climb "Chrismas trees" which were 6-10 feet high, climb water and oil tanks which were approximately 20-25 feet high, lift various tools and equipment, and bend to check various gauges. Since the accident, Mr. Bergeron has not returned to work because of the pain in his back and neck. He testified that in the past he has performed many other jobs, such as a servicehand in valve repair, a roustabout, a production roustabout foreman, wireline work, a forklift operator, and a crane operator. He further stated that he wants a career and wants to return to work.
*411 Dr. Kinnard recommended that Mr. Bergeron abstain from repetitive bending, lifting weights in excess of 25 to 35 pounds, climbing to unrestricted heights, and doing overhead work.
Dr. Cenac recommended that Mr. Bergeron abstain from repetitive overhead work and repetitive lifting of weights greater than 75 pounds. He testified that Mr. Bergeron could return to manual labor, including his former job as a gauger.
Larry Stokes, a vocational rehabilitation counselor who testified on behalf of K-Mart, stated that, after reviewing all of Mr. Bergeron's medical records, he believed that Mr. Bergeron could return to his former employment as a gauger. He further testified that, based on Mr. Bergeron's past experience, he could return to work at any number of jobs, such as supervisory work, dispatching, production coordination, material recording and scheduling, miscellaneous repair work, operating mechanical controls, and engineering. Further, Mr. Stokes sought out and identified particular jobs in the area for which Mr. Bergeron was suited with salaries equal to or better than his salary as a gauger.
Patricia Knight, a vocational rehabilitation counselor who was retained by the Bergerons, was of the opinion that Mr. Bergeron could not return to his former job as a gauger. However, she did believe he could return to some type of employment but, probably, would not make over $5.00 an hour starting salary.
Dr. J. Stuart Wood, an economist who was retained by K-Mart, testified that Mr. Bergeron's past lost wages from the time of the accident to the time of trial was $25,466.01. This figure was based on an average of Mr. Bergeron's income for the past five years, using Mr. Bergeron's income records. He used an inflation rate in the range of 2½% to 5½% and a discount rate of 10.125%. His calculation was also based on after-tax figures.
Dr. Seymour Goodman, an economist who was retained by the Bergerons, testified that Mr. Bergeron's past lost wages from the date of the injury to the time of trial, was $48,671.48. He gave the following testimony when asked how he arrived at the figure:
Well, what I did was to establish a base monthly earning capacity loss by averaging in the $1500 a month that Mr. Bergeron was earning for approximately one and a half months when he became employed on a contract basis as a gager [sic] with the $2600 a month that he averaged thereafter until his injury. That gave me an average monthly earning capacity of $2,364.29 or on an annual basis $28,371.43. And I assumed that that basically was his rate of loss for the remainder of 1985, that is, following his injury. For 1986 and 1987 up until the date of this trial and actually thereafter I projected that his earning capacity would grow as a self-employed gager [sic] by 5.1% per year on the average over this particular period. That allowed me therefore to estimate what he lost in 1986 in that capacity, likewise what he's lost up to the date of this trial this year and that was the way in which I established the loss of $48,671.48.
Dr. Goodman estimated the loss of future wages at $308,843.49.
The jury awarded Mr. Bergeron $40,000 for past and future loss of wages. The record supports this award. Under the facts of this case, the jury could have accepted the testimony offered by K-Mart about Mr. Bergeron's loss of past wages. Further, the jury reasonably could have accepted the testimony of Dr. Cenac and Larry Stokes and found that Mr. Bergeron suffered little or no loss of future earnings.
This assignment of error is without merit.

DECREE
For the foregoing reasons, the finding of the jury on the issue of Mr. Bergeron's negligence is reversed. The judgment of the trial court is amended to increase the damage award in favor of Mr. Bergeron to $126,000 and to increase the damage award in favor of Mrs. Bergeron to $10,000. In all other respects, the trial court's judgment is affirmed. The cost of this appeal is taxed to K-Mart.
*412 REVERSED IN PART; AMENDED AND AFFIRMED.
CARTER, J., concurs in part and dissents in part and will assign written reasons.
CARTER, Judge, concurring in part and dissenting in part.
I agree with the opinion of the majority in all respects, except its affirmation of the $60,000.00 general damage award, with which I respectfully dissent.
This court in Morris v. State, Department of Transportation and Development, 461 So.2d 606 (La.App. 1st Cir.1984) determined that the lowest amount that the trial court could have awarded for injuries similar to those suffered by Bergeron was $125,000.00. Additionally, in other cases involving spinal fusions as a result of ruptured or herniated disc, the courts have affirmed general damage awards between $100,000.00 and $167,500.00. See Garrett v. Celino, 489 So.2d 335 (La.App. 4th Cir. 1986); Wilson v. Wal-Mart Stores, Inc., 448 So.2d 829 (La.App. 2nd Cir.1984); and Rollings v. Winn Dixie Louisiana, Inc., 439 So.2d 1132 (La.App. 4th Cir.1983). Additionally, in Guy Doming v. K-Mart Corporation, 540 So.2d 400 (La.App. 1st Cir. 1989), this same appellate court panel affirmed a $51,000.00 general damage award to a plaintiff for a ruptured disc where the plaintiff did not have surgery and had returned to his prior employment with little or no restriction.
A general damage award of only $60,000.00, in light of the particular facts and circumstances of the instant case and specifically the fact that Bergeron underwent two surgeries, which resulted in three cervical disc fusions, is clearly inadequate.
Therefore, I respectfully dissent from that portion of the majority's opinion which affirms the general damage award. In all other respects, I concur with the majority's opinion.