|, DENNIS R. BAGNERIS, SR., Judge.
This is an action for damages for personal injuries sustained by plaintiff-appel-lee, Tammy Lofton (“Ms. Lofton”), in a fall at Magazine Flowers and Greenery, Inc. (“Magazine Flowers”) on Christmas Eve, 1994. Named as defendants in the suit were Alen Reed Hayward (“Mr. Hayward”) and Magazine Flowers, owners and/or lessees of the premises and owners and/or operators of the business known as Magazine Flowers and Greenery, Inc., and Lafayette Insurance Company, the insurer of the premises (hereafter, collectively referred to as “the defendants”).
The trial court held a bench trial and entered a judgment finding the defendants to be 75% at fault and Ms. Lofton to be 25% at fault. The trial court further determined Ms. Lofton’s total damages to be $108,859.82, subject to the applicable fault reduction together with legal interests and costs.
The defendants appeal basically alleging that the trial court judge erred in finding any liability on the defendants’ part. Ms. Lofton answered the appeal arguing that *880 the trial judge erred in finding Ms. Lofton to be 25% at fault. Ms. |?Lofton further asks for an increase in the damage award. We affirm the ruling of the trial court judge.

FACTS AND PROCEDURAL HISTORY

On December 24, 1994, plaintiff-appel-lee, Tammy Lofton, entered Magazine Flowers for the purpose of purchasing a gift for her mother. This was Ms. Lofton’s first and only time visiting this establishment.
At the time of the incident, Magazine Flowers consisted of one main floor and a raised platform where customers paid for their purchases. This platform was located approximately seventeen (17) inches above a brick floor, and it had steps around three of its sides which allowed customers to enter the platform.
After browsing around the shop for approximately thirty to forty-five minutes, Ms. Lofton decided to purchase a plant for her mother. To that end, Ms. Lofton ascended the platform to pay for her purchase. After paying for her purchase, Ms. Lofton agreed to allow the employee who was assisting her to find dry moss to use in the plant arrangement.
While waiting for the employee to return, Ms. Lofton remained on the platform. At a certain point, Ms. Lofton decided to move away from the checkout counter, as this area was crowded. As she was doing this, Ms. Lofton’s attention diverted to pots and baskets located at her eye level. Ms. Lofton took a step to get a closer look at this merchandise, and she immediately fell from the platform on to the brick floor.
13Shortly thereafter, Ms. Lofton was transported to Mercy Baptist Emergency Room, where Dr. Gregor J. Hoffman (“Dr. Hoffman”) determined that Ms. Lofton had sustained a broken wrist as a result of this fall.
Ms. Lofton subsequently filed suit against the defendants. On April 13,1999, a bench trial was held. Although the trial court judge found Ms. Lofton to be 25% at fault for the accident, she found the defendants 75% at fault and assessed damages against them in the amount of $108,859.82, subject to the applicable fault reduction together with legal interests and costs.

LAW AND DISCUSSION Standard of Appellate Review

The Louisiana Supreme Court set forth the appellate standard of review as follows:
A court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 So.2d 840 (La.1989). This court has announced a two-part test for the reversal of a factfinder’s determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
See Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
‡
14Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. See generally, Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co. 558 So.2d 1106, 1112 (La.1990). Even though an *881 appellate court may feel its own evaluations and credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
.Nonetheless, this Court has emphasized that “the reviewing court must always keep in mind that ‘if the trial court or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.’ ” Housley v. Cerise, 579 So.2d 973 (La.1991) quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990).
This court has recognized that “[t]he reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.” Canter v. Koehring Co., 283 So.2d 716 (La.1973). Thus, where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Id.
Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993).

Liability and Theories of Recovery

This accident occurred in 1994 prior to the legislative change which affected La. C.C. art. 2317 by the 1996 enactment of the new Article 2317.1. Therefore, strict liability is applicable in this case.
Under the strict liability imposed by Article 2317 before 1996, the plaintiff must prove (a) that the thing which caused the damage was in the care (custody) of | sthe defendant owner, (b) the existence of a defect or vice of the thing and (c) that his damage occurred through this defect or thing. Johnson v. Brookshire Grocery Co., Inc., 32-770 (La.App. 2 Cir. 3/1/00), 754 So.2d 346, writ denied, 2000-0938 (La.5/26/00), 762 So.2d 1107; See Landry v. State, 495 So.2d 1284 (La.1986); Loescher v. Parr, 324 So.2d 441 (La.1975). The owner is absolved from his strict liability neither by his ignorance of the defect or vice, nor by circumstances that the defect could not easily be detected. Johnson v. Brookshire Grocery Co., Inc., supra; Entrevia v. Hood, 427 So.2d 1146 (La.1983).
In order to recover in strict liability under Article 2317 or 2322 against the owner of a building, the injured person must prove that the building or its appurtenances posed an unreasonable risk of injury to others, and that his damage occurred through this risk. Upon proof of these elements, the owner is responsible for the damages, unless he proves that the damage was caused by the fault of the victim, by the fault of a third person, or by an irresistible force. The owner is absolved from his strict liability neither by his ignorance of the condition of the building, nor by circumstances that the defect could not easily be detected. Entrevia, supra; Olsen v. Shell Oil Co., 365 So.2d 1285 (La.1978); Loescher v. Parr, supra.
The requirement that an injured person in order to recover under Article 2317 or 2322 must prove that the risk from which his damage resulted posed an unreasonable risk of harm places a limitation on a building owner’s strict liability. He cannot be held responsible for all injuries resulting from any risk posed by his | fibuilding, only those caused by an unreasonable risk of harm to others. Entrevia, supra. (Emphasis Supplied).
*882 The unreasonable risk of harm criterion, however, is not a simple rule of law which may be applied mechanically to the facts of a case. Entrevia, supra. Likewise, strict liability requires the plaintiff to prove that the vice or defect of a thing is a condition which poses an unreasonable risk of harm to others. Celestine v. Union Oil Co. of California, 94-1868 (La.4/10/95), 652 So.2d 1299; Sistler, supra. The unreasonable risk of harm criterion is not a simple rule of law which can be applied mechanically to the facts of a case. Justice and social utility must serve as guideposts and moral, social and economic values must be considered in a determination of whether the risk is unreasonable. Claims and interests should be balanced, risk and gravity of harm should be weighed, and individual and societal rights and obligations must be considered. See Celestine v. Union Oil, supra; Entrevia, supra.
To maintain a slip and fall action, the plaintiff must prove the usual requirements for a negligence action (duty, breach, cause in fact, & damages) plus those found in La. R.S. 9:2800.6. Davenport v. Albertson’s Inc., 2000-00685 (La.App. 3 Cir. 12/6/00), 774 So.2d 340, writ denied, 2001-0073 (La.3/23/01), 788 So.2d 427.
At the time of the accident in the instant case, La. R.S. 9:2800.6 provided:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to 17keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, and in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
C. Definitions:
(1) “Constructive notice” means the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.
(2) “Merchant” means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business.
D. Nothing herein shall affect any liability which a merchant shall have under CM Code Arts. 660, 667, 669, 2317, 2322 or 2695.
Generally, a pedestrian has a duty to see that which should be seen; he is not required to look for hidden dangers but he is bound to observe his course to see if his pathway is clear and is held to have seen those obstructions in his pathway which would be discovered by a reasonably prudent person exercising ordinary care under the circumstances. Bergeron v. K-Mart Corp., 540 So.2d 406 (La.App. 1st Cir.1989); Dunaway v. Rester Refrigeration Service, Inc., 428 So.2d 1064 (La.App. 1st Cir.1983), writ denied, 433 So.2d 1056 (La.1983). However, in a self-service store, a multi *883 tude of items are displayed upon shelving along the aisles which entice a customer to focus his eyes upon the displays rather than on his ]spathway. Therefore, in a self-service store, a patron has a diminished duty to see that which should have been seen because his attention is presumed to be attracted to the advertised goods on the shelves. Bergeron v. K-Mart, supra; See Kavlich v. Kramer, 315 So.2d 282 (La.1975); Dulaney v. Travelers Insurance Company, 434 So.2d 578 (La.App. 1st Cir.1983); Guy v. Kroger Company, 204 So.2d 790 (La.App. 2nd Cir.1967). A customer’s duty to keep a proper lookout is diminished when shelved or hanging merchandise attracts her attention. Dupre’ v. Maison Blanche, Inc., 97-0652 (La.App. 1 Cir. 4/8/98), 712 So.2d 567; Kimble v. Wal-Mart Stores, 539 So.2d 1212 (La.1989). However, the customer’s duty to keep a proper lookout is not wholly extinguished, and the customer retains the duty to exercise reasonable care under the circumstances. Dupre’ v. Maison Blanche, Inc., supra; Hutchinson v. Wal-Mart, Inc., 573 So.2d 1148 (La.App. 1st Cir.1990); Stark v. National Tea Company, 94-2633 (La.App. 4 Cir. 5/16/95), 655 So.2d 769.

Analysis of Liability

Using the above-cited legal precepts as a guide for our analysis, after a careful review of the record evidence in this matter, we find that the trial court did not err when it reasonably found the defendants liable for Ms. Lofton’s injury.
It is undisputed that Mr. Reed and Magazine Flowers were the owners and/or operators of the premises in which Ms. Lofton sustained her injury. It is also undisputed that Ms. Lofton sustained an injury as a result of her fall from the platform located on the premises. It is also undisputed that Magazine Flowers had existed in this same location with this same platform for over twenty years.
At trial, Jason Craft testified that “virtually throughout” the store, there is display material, flowers, pottery, baskets, “as much as can be displayed is [¡^displayed.” He confirmed that not only were items displayed along the walls, but items were also hanging from the rafters of the ceiling. Mr. Craft testified that the purpose of all of this display if “for sales”. When Mr. Craft was asked why things were displayed this way in the store, he explained as follows: “Well, when you have a shop you try and display every available space you have.” Mr. Craft went on to confirm that this is for the purpose of catching the customer’s attention and placing it on to the items the store is trying to sell. Mr. Craft also confirmed that there were no railings around the perimeter of the checkout area; there were no warnings on the floor; there were no warning signs posted any place near the area where Ms. Lofton fell advising customers to “Watch Your Step”. He testified that on the day of the accident, there were so many people in the store that it was “mayhem.” Mr. Craft further testified that the steps leading to and from the platform were the same color as the platform.
Ronald Cressy (“Mr. Cressy”) was called and offered as an expert in engineering. Mr. Cressy testified that he had been retained by Lafayette Insurance Company for the purpose of investigating the accident, which he did by visiting the store and taking photographs and making measurements of the platform. Although Mr. Cressy testified that he did not find any defects in the platform per se, he did note the following: there were no railings anywhere around the perimeter of the platform; there was no “differentiation” of the change in elevation at the platform by the steps; like the top of the platform, the *884 steps are constructed of the same color plywood. Mr. Cressy confirmed that there were no visual clues or signs located at eye level with words such as “Watch Your Step”. Mr. Cressy also confirmed that from his standpoint as an engineer, customers can be distracted by items in their path. Mr. Cressy went on to testify that perimeter railings could have Impossibly prevented this accident, and he confirmed that tape would have probably helped as well. Mr. Cressy noted that the costs of tape and perimeter railing were minor,
Ms. Lofton testified that she had no trouble walking in her shoes, and she had never had any such trouble. She stated that she had not been drinking; nor was she on any kind of medication or sedatives that would have made her unsteady on her feet. She further testified that when she fell, she was attempting to walk over to some display items that caught her eye.
Using the above-cited legal precepts as a guide for our analysis, after a careful review of the record evidence in this matter, we find that the trial court did not err when it found the defendants liable for Ms. Lofton’s injury. The testimony of defendant’s own witnesses, as well as the testimony of Ms. Lofton, illustrated that the defendants failed to honor its duty to the patrons in its store. There is no merit to the defendants’ argument that the trial judge erred in finding the defendants’ liable for Ms. Lofton’s injury.

Allocation of Fault

Ms. Lofton’s counsel argues that the trial court erred when it assessed 25% of fault for this accident and its resulting injury to Ms. Lofton. We disagree with this argument.
This Court dealt with the allocation of fault in Doyle v. McKinney, 98-1102 (La.App. 4 Cir. 4/7/99), 732 So.2d 128:
In our review of the trial court’s allocation of fault between the defendant’s [sic], we are guided by Clement v. Frey, 95-1119, 95-1163 (La.1/16/96), 666 So.2d 607, 610-611. In that case, the Louisiana Supreme Court requires intermediate courts of appeal to consider the trial court’s allocation of fault under the same standard of |nreview applied to awards of general damages. Accordingly, trial courts have a great deal of discretion when allocating fault. This Court has opined that the allocation of fault is not an exact science, or the search for one precise ratio. Rather, it is an acceptable range and any allocation within that range cannot be “clearly wrong”. Riley v. Reliance Ins. Co., 97-0445 (La.App. 4 Cir. 11/19/97), 703 So.2d 158. In Clement, the Supreme Court held that any allocation of fault falling between a ratio of 50/50 and 75/25 would be reasonable. This is illustrative of the great discretion a trial court has when allocating fault.
After careful review, we find that the trial court did not abuse its vast discretion when it found Ms. Lofton to be 25% at fault for this accident. Even though Ms. Lofton’s duty to “see that which should have been seen” was diminished by the fact that Magazine Flowers had a multitude of display items which could easily distract her attention, she still had some duty to watch where she was going, especially in light of the fact that, within that same hour, she’d ascended steps to come up on to the platform to pay for her purchase. There is no merit to Ms. Lofton’s argument on this point.

Damages

In Doyle v. McKinney, supra, this Court, citing Clement v. Griffin, 91-1664 (La.App. 4 Cir. 3/3/94), 634 So.2d 412, also dealt with the issue of appellate review of damage awards and stated as follows:
Assessment of damages is within the province of the fact-finder and should not be disturbed in the absence of manifest error, and the appellate court *885 should not consider whether a different award might have been more appropriate but, rather, only whether the award made by the trial court is reasonably supported by the record; Appellate courts must review the trial court’s records and render judgments in quantum based on the merits of the case by considering whether the fact-finder abused its much discretion in setting the damage award.
|1gMs. Lofton’s counsel argues that the trial court award of damages is insufficient and should be increased, and counsel cites and describes similar cases, noting the larger awards in those cases. We disagree.
Because of the great deference we owe to the trier of fact with regard to its damages, we find that the trial court’s award in this case was not an abuse of discretion and is supported by the record evidence.

CONCLUSION

Accordingly, for the reasons set forth above, we affirm the trial court judgment.

AFFIRMED.