543 So.2d 1121 (1989)
Anastasia VEAL
v.
Theresa FORREST, and Dairyland Insurance Company.
No. 87 CA 1730.
Court of Appeal of Louisiana, First Circuit.
May 16, 1989.
*1122 Robert W. Braiwick, Jr., New Orleans, for plaintiff-appellant Anastasia Veal.
Christopher Moody, Hammond, for defendant-appellee.
Before EDWARDS, SHORTESS, SAVOIE, CRAIN and LeBLANC, JJ.
SHORTESS, Judge.
Anastasia Veal (plaintiff) brought suit against Theresa Forrest (defendant) and Dairyland Insurance Company for injuries resulting from a rear-end collision. Plaintiff's car, which was second from a traffic light, was hit from the rear by defendant's car, which was fourth from the light. The case was tried by jury. Judgment was rendered against plaintiff and in favor of defendants. Plaintiff has appealed from this judgment. Defendants neither appealed nor answered plaintiff's appeal.
The accident occurred in Hammond, Louisiana, on January 10, 1985. Plaintiff testified that the car in front of her was stopped at the light; that she was also at a complete stop when the car behind her "clashed" with her bumper; and that she struck the car in front of her, "but not much." Defendant admitted at trial that she hit the car in front of her. Robert Peter Kelly, the driver of the third car, testified that there were two cars in front of him, stopped at the traffic signal; that the first car "stopped abruptly"; that the second car (plaintiff's) came up and had to stop in an "awful hurry," and "[i]f I recall right, they touched bumpers"; that he applied his brakes and came to a complete stop; that defendant's car collided with his car and pushed it into plaintiff's car; and that he thought he heard a crash before his car was knocked into plaintiff's. However, he admitted he had no way of actually seeing a collision between plaintiff and the first vehicle, and only thought he heard a noise. Plaintiff denied colliding with the vehicle in front of her until after she was struck in the rear and "knocked" into the lead vehicle. No damage was done to any of the vehicles.
Plaintiff had preexisting, asymptomatic spondylosis and degenerative arthritis before the accident. After the accident, she sustained lower back and right leg pain, as well as a mild cervical strain. Three doctors testified at trial about plaintiff's injuries.
The jury answered interrogatories propounded to it as follows:
1. Was Theresa Forrest at fault? xYes
__No If so, was her fault a legal
cause of damages? __ Yes xNo
If so, what was the degree of such
fault? (Please express in percentage.)
10%
2. Was Anastasia Veal at fault? xYes
__No
[If] so, was her fault a legal cause of
damages? __ Yes xNo
If so, what was the degree of such
fault? (Please express in percentage.)
25%
(Percentages of Numbers 1 and 2 combined
shall not exceed 100%.)
3. Was Anastasia Veal injured as a result
of the accident? __Yes xNo
If your answer is yes, please express
the damages in dollars. (Do not increase
or reduce because of any percentage.)
 $ -0- 
THUS done this 5th day of August, 1986.
 Charlsee' Alford
 FOREPERSON
Because the jury's apportionment of fault between plaintiff and defendant did not add up to 100%, the trial judge asked the jury if there was a special reason for that. The jury foreman replied, "Yes, sir." The trial judge then asked, "Was this because of other vehicles?" The jury foreman replied, "Yes, sir." The matter was not pursued any further.
*1123 When inconsistent and confusing findings do not necessarily support a judgment either for the defendant or for the plaintiff, we must assign the jury's findings no weight and render a proper judgment based on our independent review of the record, in accordance with law. Porter v. Utica Mutual Insurance Co., 357 So.2d 1234 (La.App. 2d Cir.1978); McLean v. Hunter, 495 So.2d 1298 (La.1986); LSA-C.C.P. art. 2164. A trier of fact may apportion fault of an absent party in connection with an automobile accident. Varnado v. Continental Insurance Company, 446 So. 2d 1343 (La.App. 1st Cir.1984). An analysis of the jury's answers to the interrogatories propounded here, however, makes it clear that the answers were both hopelessly confused and hopelessly confusing. There was no issue as to the fault of any non-party driver.[1] By finding, first, that both parties were at fault; second, that such fault was not the legal cause of damages; and, third, assessing a percentage of fault to each party totalling 35% despite the fact that such fault was not the legal cause of damages,[2] the jury committed legal error.[3] We go on to review the record independently.
LSA-R.S. 32:81(A) prescribes the proper conduct for a following driver:
The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway.
This statute has been interpreted to create a rebuttable presumption that a following motorist who strikes a preceding motorist from the rear has breached the standard of care the statute prescribes. Eubanks v. Brasseal, 310 So.2d 550 (La.1975). In order to exculpate himself from liability, the following motorist must show that he kept his vehicle under control, closely observed the forward vehicle, followed at a safe distance under the circumstances, or that the driver of the lead vehicle negligently created a hazard which the following vehicle could not reasonably avoid. State Farm Mutual Automobile Insurance Company v. Hoerner, 426 So.2d 205 (La.App. 4th Cir.1982), writ denied, 433 So.2d 154 (La. 1983).
Defendant admitted at trial that she knew she hit the car in front of her. Plaintiff denied colliding with the lead vehicle until after she was struck by defendant and knocked into it. Kelly's car had come to a complete stop before defendant's vehicle hit it. He thought there were two collisions but did not see one in front of him.
Defendant did not rebut the presumption of negligence. The jury found her to be at least partially at fault. Had she exculpated herself by showing that she exercised reasonable care or that the lead vehicle created an unavoidable hazard, clearly the jury could have found, as it did, that she was not even a legal cause of plaintiff's damages. The jury could not, as *1124 it did, either legally or factually, separate fault and legal causation. It apparently found that most (65%) of the unallocated fault caused all of the damagesand that some (35%) of the allocated fault caused none of the damages. Even if it is true that the lead vehicle "stopped abruptly" at the traffic light, such an action hardly constitutes a hazard which could not reasonably be avoided by a following vehicle. Nor does the fact that the third car, driven by Kelly, had come to a complete stop before it was hit from behind by defendant serve to exculpate defendant. Since defendant did not exculpate herself from fault, she likewise failed to exculpate herself from liability for plaintiff's damages. We reverse the jury's findings on liability, and go on to consider the issue of plaintiff's damages.[4]
Plaintiff was, at the time of the accident, 55 years old. She was a practical nursing instructor in Plaquemine and commuted to her job every day from her home in Hammond. Plaintiff saw her family doctor, Frank Anzalone, on January 12, 1985, two days after the accident. At that time, she had tenderness over the right lower hip and tenderness in the right posterior neck, but she exhibited full range of motion in the neck. Dr. Anzalone diagnosed probable right sacroiliac strain and mild cervical strain. He prescribed muscle relaxants and a mild tranquilizer. Plaintiff also complained of numbness and pain in her right leg. He saw her again on January 16, and she complained of soreness in her right leg and right posterior leg on driving. On February 2 her neck was better. She returned on February 16, saying her neck was improved but she still had pain in her right hip and leg. Anzalone referred her to Dr. Luis Matta, an orthopedist in Covington, Louisiana.
Matta first examined plaintiff on February 26, 1985. His working diagnosis at the time was muscular ligamentous injury to the low back. Findings were minimal on physical examination. He found, on interpretation of plaintiff's x-rays, that she had a reverse spondylosis of the fifth lumbar vertebra, as well as degenerative arthritic changes. Because she complained of pain and numbness but exhibited minimal objective signs, he ordered a CAT scan in order to rule out possible nerve root compression syndrome. He prescribed Feldene and Motrin, both anti-inflammatory agents. The CAT scan was negative. She continued complaining of pain, and he saw her on April 9 (when the CAT scan was performed), April 16, May 16, and June 13. By May 16, she was much better, and on June 13 he released her. Plaintiff returned on August 5, complaining that her pain had become worse because of extensive driving. He explained to her that because she had a preexisting arthritic condition, driving would aggravate her symptoms. She returned to Dr. Anzalone on January 8, 1986, still complaining of numbness in her right leg. She saw Matta again on March 25, 1986, and at that time he diagnosed the numbness in her right leg as meralgia parasthetica, or an aberration of sensation in the front of the right thigh. Her previous complaints of numbness in her thigh related to the back of the thigh, and the nerves involved in meralgia parasthetica are controlled at a higher lumbar level of the spine, L-1 and L-2. Plaintiff's arthritic changes manifested themselves at L-4 and L-5. On March 25, 1986, plaintiff had excellent range of motion in her lower back, no spasms, and no tenderness of the lower back.
Dr. Courtney Russo, an orthopedist in New Orleans, also testified at trial. He saw plaintiff on September 24, 1985, and November 25, 1985. His diagnosis was lumbosacral pain superimposed upon a preexisting arthritic scoliotic spine. Plaintiff on September 24 could flex forward 80%; straight leg raising was normal on the left side. On the right side, she could raise her leg 90% but felt pain at that point.
*1125 On November 25, her physical examination was within normal limits.
Plaintiff testified that she missed no work at all as a result of the accident, although her daughter and neighbor both thought she had sometimes missed work. Her neighbor brought over food for plaintiff every day when plaintiff returned home from work because plaintiff was unable to cook for herself. Plaintiff's daughter testified she performed various errands, as well as housework, for her mother because plaintiff could no longer do so. Plaintiff also testified that for five months she rented an apartment in Baton Rouge at $150.00 a month because her hour-long commute twice a day was too painful and Dr. Matta had recommended she cut back on her driving.
Plaintiff's medical bills established at trial totalled $810.00. Dr. Anzalone's bill was $145.00; the hospital bill for the CAT scan was $375.00; and Dr. Russo's bill was $290.00. Dr. Matta's fees for his treatment were not proven. There is nothing in the record from which we can determine what Dr. Matta charged for his services, but we do note that plaintiff saw him in his office on six occasions: February 26, April 16, May 16, June 13, August 5, and March 25, 1986.
Matta testified that, at the most, a musculoligamentous strain superimposed on arthritic changes would resolve itself within six to twelve weeks of the accident. Russo believed that, with such a preexisting condition in a 57-year-old woman, it could take years for the condition to heal; however, he found that, objectively, plaintiff's condition had resolved on November 25, 1986. Both physicians conceded that driving would aggravate plaintiff's symptoms, and plaintiff certainly proved that she had to drive from Hammond to Plaquemine (about 60 miles each way) every work day. Further, Russo was of the opinion that it was highly probable that this accident aggravated her preexisting arthritic condition. A tort-feasor takes the victim as he finds him. Nolan v. Ochello, 433 So.2d 1100 (La.App. 1st Cir.), writ denied, 441 So.2d 210, 211 (1983).
Considering all the evidence, we believe an award of $10,000.00 will do substantial justice to plaintiff for her special and general damages. Costs are taxed to Theresa Forrest and Dairyland Insurance Company.
REVERSED AND RENDERED.
SAVOIE, J., dissents and assigns reasons.
SAVOIE, Judge, dissenting.
I respectfully dissent.
I do not feel that the jury findings were inconsistent and confusing. In addition, I feel the jury did not commit legal error and that the jury's findings should be affirmed.
The jury clearly felt that both Forrest and Veal were at fault in causing the accident. The jury obviously felt that a non-party or non-parties were also at fault in causing the accident. It is clear, by virtue of interrogatory # 3, that the jury felt that Veal's damages, (i.e., her back problems), were not a result of this minor accident. Additionally, the jury apparently reasoned that the fault of Forrest and Veal in causing the accident was not the legal cause of Veal's back problems. The jury obviously felt that Veal's back problems were unrelated to this accident. There is ample evidence to support such a finding.
Since the jury found that Veal was partially at fault in causing the accident, the jury must have given more weight to the testimony of Robert Kelly. Kelly was articulate and did not contradict himself at any point during his testimony.
In contrast, Veal contradicted herself several times during her testimony. In particular, she contradicted herself concerning prior accidents and prior injuries. It appears that the jury did not find her credible in respect to the testimony concerning her damages that allegedly resulted from the accident.
I agree with the jury's conclusions and find them amply supported by the evidence. I find no error manifest or otherwise. We should not substitute our evaluations, inferences *1126 or credibility calls for those of the trier of fact.
NOTES
[1] In his opening statement, defendant's counsel said, "Ms. Forrest rear-ended the other drivers. We're not disputing that. We can't deny that and won't. We're not going to come here and try to squeeze out from liability. We're fessing up." Although there was no stipulation of liability entered into evidence, defendant offered no evidence from which a jury could reasonably conclude that any driver other than plaintiff or defendant was being blamed for plaintiff's damages.
[2] Neither LSA-C.C.P. art. 1812, upon which these interrogatories are based, nor these interrogatories themselves ask whether a party or non-party's fault caused the accident. Instead, the query is whether the fault caused plaintiff's damages. This creates further ambiguity in this case. Arguably, the jury believed that the fault of a non-party was the legal cause of the accident and thus that plaintiff's damages were caused by the fault of a non-party.
[3] The suggested special question in LSA-C.C.P. art. 1812(C)(2)whether another person, whether non-party or not, was at faultwas not asked here. That question is required, if appropriate, to be submitted to the jury. Lemire v. New Orleans Public Service, Inc., 458 So.2d 1308 (La. 1984). Apparently, here, the judge did not believe it appropriate that such a question be submitted to the jury. Since plaintiff failed to move for a judgment notwithstanding the verdict, that issue is not before us. There is nothing in the record to indicate whether or not such an interrogatory was requested by either party.
[4] Because the jury found that the legal cause of plaintiff's damages was the fault of neither defendant nor plaintiff, it did not need to reach the third interrogatory, which was whether plaintiff was injured as a result of the accident. It answered "No" to that question. It is impossible to determine whether the jury believed plaintiff simply was not injured or whether it found that any injuries she sustained were not the responsibility of defendant.