587 So.2d 103 (1991)
Peter MARSHALL, Jr., Appellee,
v.
A & P FOOD COMPANY OF TALLULAH and Crawford & Company, Appellants.
No. 22699-CA.
Court of Appeal of Louisiana, Second Circuit.
September 25, 1991.
*105 Davenport, Files & Kelly by Mike C. Sanders, Monroe, for appellants.
Samuel Thomas, Tallulah, for appellee.
Before MARVIN, SEXTON and NORRIS, JJ.
NORRIS, Judge.
This suit arises out of an incident in which plaintiff Peter Marshall fell in an A & P grocery store after allegedly slipping in a foreign substance on the floor. The trial court awarded Marshall $15,858.99 in total damages, together with interest. A & P appeals the judgment, asserting in seven assignments of error that the trial court erred in:
(1) finding that Marshall's fall was caused by a hazardous substance on the floor;
(2) refusing to apply La.R.S. 9:2800.6 (slip and fall statute), resulting in reversible error;
(3) imposing strict liability and finding A & P liable for a defective bag;
(4) failing to find Marshall comparatively negligent;
(5) awarding excessive general damages; and,
(6) awarding the finance charges on Marshall's drug bills.
For the reasons set out below, we affirm the finding of liability but amend the quantum awarded.

FACTS
On the evening of January 8, 1987, Marshall and his "common law wife," Katherine Robinson, were shopping at the A & P store in Tallulah, Louisiana. The two selected a bag of chicken from the meat market and placed it in their shopping cart; the bag did not appear to be leaking at this time. Marshall and Mrs. Robinson then went in opposite directions to pick up different items, leaving the cart parked in an *106 aisle. It is undisputed that Marshall fell to the floor as he returned to the shopping cart a few minutes later, and that the fall resulted in cervical and lumbosacral strain requiring medical treatment. However, the circumstances of the fall are very much in dispute. We will elaborate on the facts as they pertain to the assignments.

CAUSATION
The trial court stated in its reasons for judgment that "the testimony and evidence adequately established that chicken blood and water, leaking from the plastic bag onto the grocery floor from Mr. Marshall's cart caused him to fall and be injured." By its third assignment, A & P contends that this factual finding was manifestly erroneous. We disagree.
A & P asserts that the fall could not have happened as Marshall claims. First, it argues, very little liquid could have accumulated in the bag of chicken and then leaked to the floor. The record establishes that the bag, secured at the top with a tie, contained 10.31 lbs. of chicken quarters. Mrs. Virginia Carney, an A & P cashier, testified that such a bag would probably contain no more than one cup of liquid. A & P argues that this small amount of liquid was insufficient to spread from under the cart to the place where Marshall fell several feet away. Mrs. Carney further testified that when she responded to Mrs. Robinson's call for help, the only liquid she saw on the floor was a small, orange-sized puddle directly beneath the shopping cart. In addition, one of the police officers who arrived soon after the accident also observed liquid "around the basket," and concluded that the substance came from the chicken bag because there was a puddle directly beneath the cart. A & P thus argues Marshall could not possibly have slipped on liquid that was localized beneath the cart, citing Marshall's and Mrs. Robinson's testimony that he fell before he reached the cart. Mrs. Carney also testified that when she arrived at the scene, Marshall was flat on his back but the soles of his shoes appeared dry and clean.
Mrs. Robinson, however, testified that there was liquid "all over the floor" where Marshall fell. He himself testified that he slipped and his feet went out from under him. After he fell, he could see some liquid on the floor, though he could not say exactly how much. He and Mrs. Robinson both testified that the pants he was wearing that day were soaked with the liquid. The pants were admitted as Plaintiff's Exhibit # 1 with the stains still visible.
A & P suggests that Marshall may have fallen as a result of a "seizure," as he was troubled by high blood pressure, heart problems and diabetes, and had experienced dizziness on previous occasions. Furthermore, Mrs. Robinson said that Marshall had been in bad health when Mrs. Carney asked her if he might have fallen due to a seizure. However, Marshall testified that he was not dizzy, "swimmy-headed" or on medication the day of the accident.
A trial court's findings of fact may not be set aside on appeal in the absence of manifest error or unless they are clearly wrong, and where there is conflict in the testimony, reasonable evaluations of credibility and inferences of fact should not be disturbed on review. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). If trial court findings are reasonable in light of the entire record, an appellate court may not reverse, and a fact-finder's choice between two permissible views of the evidence cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). Causation is a fact question on which the trial judge's finding cannot be disturbed absent manifest error. Mart v. Hill, 505 So.2d 1120 (La.1987).
The record permits the conclusion that Marshall did in fact slip in liquid which had dripped from the bag of chicken, perhaps inadvertently kicking the cart as he fell, thus permitting a new accumulation of liquid beneath the cart. The trial court resolved conflicting testimony about the amount of liquid present on the floor in Marshall's favor.
*107 The court concluded that Marshall had shown by a preponderance of the evidence that watery chicken blood had leaked from the bag in his cart, and that he slipped in that substance and fell. The trial court's determination in this regard is adequately supported by the record and is not clearly wrong. This assignment is without merit.

NEGLIGENCE
A & P also assigns as error the court's refusal to apply La.R.S. 9:2800.6, claiming this resulted in the application of an incorrect standard of proof to the case. The slip and fall statute as enacted by Act 714 of 1988 explicitly applied "to all cases tried on or after" July 18, 1988. This case was tried in November 1989, but the court declined to apply the statute because the accident took place before the statute's effective date. The court relied on McCardie v. Wal-Mart Stores, 511 So.2d 1134 (La. 1987), the case implicitly overruled by enactment of the statute, and noted A & P's failure to offer testimony from its meat market manager; thus A & P submits that the court's refusal to apply the statute was reversible error. We disagree.
Admittedly, the trial court was wrong not to apply the statute. The plain language of the enabling legislation makes it applicable to this case. See Morgan v. Stanley Stores, 550 So.2d 733, 735 fn. 1 (La.App.2d Cir.1990).
Moreover, the statute changes the law only to lighten the extremely heavy evidentiary burden placed on defendant merchants by the McCardie decision.[1] The statute first codifies the merchant's court-defined duty to exercise reasonable care to keep the premises free of "any hazardous conditions which reasonably might give rise to damage." R.S. 9:2800.6A. Under both paragraph B of the statute and the jurisprudence, the plaintiff must first prove that he suffered damages due to an accident which was caused by a hazardous condition on the merchant's premises. The burden of proof then shifts to the merchant to present evidence exculpating himself from the presumption of negligence. Kavlich v. Kramer, 315 So.2d 282 (La.1975); Gonzales v. Winn Dixie Louisiana, Inc., 326 So.2d 486 (La.1986). However, under McCardie, in order to exculpate himself from this presumption, the merchant had to introduce the testimony of virtually every employee who worked in the area of the store where the accident occurred; only if these employees all testified that they had not actually caused the hazardous condition could the merchant hope to prevail by showing that he exercised such a degree of care that he would have known under most circumstances of a hazard caused by customers. See McCardie, supra, at 687. In contrast, R.S. 9:2800.6 provided, in part:
C. In exculpating himself from liability under this subsection, the merchant need not introduce the testimony of every employee of the merchant or any particular proportion thereof, but is only required to introduce the testimony of any employee shown to have actually created the hazardous condition and those employees and management personnel whose job responsibilities included inspection or cleanup of the area where the accident giving rise to the damages occured.
A & P submits that, under the statute, it is the plaintiff who must affirmatively "show," as a part of his prima facie case, that an employee actually created the hazard. Only then need the defendant merchant bring forth testimony to rebut this showing of actual culpability or notice of the problem. We do not believe that the legislature intended the language in paragraph C to place an additional element in the plaintiff's initial burden of proof, particularly since such a construction would be incompatible with the plaintiff's burden of proving only "that the accident was caused by a hazardous condition." R.S. 9:2800.6B.
The elements to be proved by the respective parties were unchanged by the statute; only the extent of evidence required of the *108 defendant was modified. Since it is procedural in nature, the statute should have been applied retroactively. Ardoin v. Hartford Accident & Indemnity Co., 360 So.2d 1331, 1339 (La.1978).
The trial court's refusal to apply the statute was error, so we have considered whether the error affected the outcome. As noted, both the jurisprudence and the statute required the plaintiff to show only that he suffered damage as a result of a hazardous condition on the defendant's premises. The trial court found that Marshall had successfully made his prima facie case by showing that a hazardous condition existed (watery chicken blood on the floor) and that his accident and resultant damages were caused by that hazardous condition. This conclusion is not plainly wrong.[2] It was appropriate for the court to shift the burden of proof to A & P to exculpate itself from the presumption of negligence.
It was A & P's burden to prove that it acted in a reasonably prudent manner in exercising its duty to keep its premises free of any hazardous condition. Two elements comprise this burden of proof. First, the defendant must present evidence that none of its employees actually caused the spill, thus showing the store had no actual knowledge of the problem. Second, the merchant must offer evidence of the steps taken by the store to prevent or correct hazardous conditions possibly created by customers; proof of this element would show that the store had no constructive knowledge of the problem and therefore could not have prevented the accident.
The trial court found that A & P failed to meet either aspect of its two-fold burden. Regarding the first element of proof, the record supports the inference that A & P was negligent in causing the leak through improper packaging procedures or in failing to prevent the leak either through a lack of established or adequately enforced procedures for checking bags for excess liquid or through the absence of any mechanism to warn customers to keep the bags upright in their carts to avoid leakage.
The testimony of Marshall and Mrs. Robinson that they didn't notice the bag leaking when they picked it up is hardly dispositive. A & P knew these bags had a propensity to leak. Mrs. Carney testified that chicken bags "make water" as she had noticed at the checkout counter; they are checked periodically during the day by the meat market manager and repackaged when too much liquid accumulates. A & P was thus well aware that leakage from these bags presented a potential hazard. The possibility that such liquid might find its way to the floor in a customer traffic area was a risk well within the scope of A & P's duty to make a "reasonable effort to keep the premises free of any hazardous condition which reasonably might give rise to damage." Among the purposes for imposing a higher duty of care on store operators was to encourage development and utilization of "adequate protective measures that lead to the actual discovery of dangerous conditions." Brown v. Winn-Dixie, 452 So.2d 685, 687 (La.1984). Testimony as to packaging and safety procedures, therefore, was necessary to determine whether A & P did in fact make a reasonable effort to avoid a known risk of precisely the type of harm which occurred in this case. A & P offered no evidence to show, for instance, how employees were instructed to fill and close the bags, how often the bags were checked for excess liquid or leaks, or whether customers were warned in any way of the potential risk of leakage.
A & P claims that the court relied too heavily on the absence of testimony from the meat market manager and assumed from this ommission that an A & P employee had actually placed an already leaking bag of chicken on display. The court made no such specific finding. However, it properly *109 noted that no employee having first-hand knowledge of the meat department, either on the day of the accident or in general, had been called to testify. Mrs. Carney testified that she had no way of knowing whether or when the bag in question had been checked for leaks, since such inspection was primarily the responsibility of the meat market manager. She did not know who, if anyone, was on duty in the meat market the day of the accident.
It is clear that the court based its decision not on A & P's failure to call every employee to testify, as might have been dictated by McCardie, but instead on the total absence of competent testimony that A & P's meat market personnel were responsible neither for creating the actual hazard nor for failing to take reasonable measures to prevent it. If A & P actually had any safety measure which would fulfill its duty to exercise reasonable care to avoid this risk, it declined to share this information with the court. The court was thus not clearly wrong in finding that A & P failed to exculpate itself from the presumption that it was negligent.
The trial court held that A & P also failed to satisfy the second element of its burden of proof because it offered no evidence of inspection and cleanup procedures to show a lack of constructive knowledge of the spill. A & P argues that such testimony would have been meaningless; given the amount of time between the spill and Marshall's fall, it would have been impossible for even the most diligent clean-up crew to discover and address the problem. The trial court was correct that A & P offered no such evidence. However, it is unnecessary for us to reach this issue since A & P failed to rebut the presumption that it was responsible for creating a hazardous condition.
The court's finding of negligence is supported by the record and was appropriate under the slip and fall statute. Assignments two and five are without merit.

STRICT LIABILITY
A & P further argues, by its first assignment, that the trial court erroneously found the store strictly liable to Marshall due to an allegedly defective bag, and that the court confused the law applicable to negligence and strict liability theories. This assignment lacks merit.
While the burdens of proof in the slip and fall jurisprudence applied by the court differ from ordinary negligence standards, nothing in the court's reasons for judgment indicates that its conclusions were based on strict liability. The court specifically cited Civil Code articles 2315 and 2316, rather than 2317, and relied on several slip and fall cases based solely on negligence. A & P nevertheless asserts that the court based liability on a defective chicken bag, and erroneously placed the burden of proving that the bag was not defective on the defendant. In support of this theory, A & P cites the following language from the court's reasons:
Defendant argues that Mr. Marshall must have treated the bag roughly [in] order for it to begin leaking but offered no evidence beyond this bare assertion to establish it as fact ... Defendant's evidence does not meet [its] burden of proving that the store was not at fault in causing the leak in order to exculpate it from the presumption that it was negligent.
These statements obviously refer to the court's discussion of negligence. The court concluded that Marshall slipped in the chicken liquid, finding that he had met his initial burden of showing that a hazardous condition existed. Based on this initial finding, the court correctly shifted the burden to A & P to show what it had done to lessen the likelihood of such a problem. The fact that A & P declined to offer such proof does not transform the court's decision into a finding of strict liability. Nothing in the record or the reasons for judgment indicates that the court imposed strict liability or allocated burdens of proof inappropriately. This assignment is without merit.

COMPARATIVE NEGLIGENCE
A & P alternatively argues in assignment number four that, if Marshall *110 truly fell because he slipped in the liquid, the trial court erred in failing to find him comparatively negligent. A & P submits that the combination of chicken blood and water would have been clearly visible on the light colored floor and that Marshall offered no testimony to suggest that he was diverted by displays at the time he fell. We find this assignment to be without merit.
It is incumbent on the defendant to affirmatively show that the plaintiff was comparatively negligent. Hughes v. Querbes & Nelson, Inc., 460 So.2d 1161 (La.App. 2d Cir.), writ denied 462 So.2d 1265 (1984). Comparative fault is a question of fact which will not be disturbed absent manifest error. Towns v. Georgia Casualty & Surety Co., 459 So.2d 124 (La. App. 2d Cir.1984), and citations therein. The law does not require a supermarket customer to devote his attention meticulously to the floor in front of him as he walks. Raymond v. Safeway Stores, Inc., 522 So.2d 1350, (La.App. 2d Cir.1988); Zeagler v. Dillard Dept. Stores, Inc., 521 So.2d 766, 770 (La.App. 2d Cir.1988). In a self-service store, a patron has a diminished duty to see that which should be seen because his attention is presumed to be attracted to the advertised goods on the shelves. Bergeron v. K-Mart Corp., 540 So.2d 406, 408 (La.App. 1st Cir.1989), citing Kavlich v. Kramer, supra and Dulaney v. Traveler's Ins. Co., 434 So.2d 578 (La.App. 1st Cir.1983). See also Kimble v. Wal-Mart Stores, Inc., 539 So.2d 1212 (La.1989); Lloyd v. TG & Y Stores Co., 556 So.2d 629 (La.App. 2d Cir.1990); Ritchie v. S.S. Kresge Co., Inc., 505 So.2d 831 (La.App. 2d Cir.1987).
Marshall testified that he neither saw the substance on the floor until he had already fallen, nor had any warning that the floor might be wet. Nothing in the record indicates that he was inattentive or otherwise careless in his conduct. While the testimony conflicts as to the amount of liquid present on the floor and its precise color, the trial court found, without expressly addressing the issue of comparative fault, that Marshall slipped in "light pinkish colored" liquid on the light colored floor. Witnesses at the scene after Marshall's fall may have noticed the spill only because they were looking for it. Under these circumstances, the trial court's failure to find Marshall comparatively negligent is not clearly wrong.

GENERAL DAMAGES
A & P urges in assignment number seven that the court abused its discretion in awarding Marshall general damages of $10,000 for physical pain and suffering and $5,000 for mental suffering and distress. We find that this assignment has merit, and amend the judgment accordingly.
The assessment of monetary damages is discretionary with the trial court and a judgment cannot be disturbed by a reviewing court absent a clear showing of abuse of discretion. The determination of whether a trial court abused its discretion in assessing damages must be based upon the peculiar facts of each case and with due regard for the fact that the trial court is in the best position to evaluate the credibility of the witnesses, including their testimony about the nature and extent of their injuries. Lloyd v. TG & Y Stores Co., supra, at 634.
The question for the appellate court is not whether a different award may have been more appropriate but rather whether the trial court's award can be reasonably supported by the record. The appellate court must first reach a determination before a resort to prior awards is appropriate for purposes of determining what would then be an appropriate award. Lloyd v. TG & Y Stores Co., supra at 636.
There is no question that Marshall was hurt in the fall. The physician who examined him at the emergency room immediately after the accident diagnosed his injury as strain of the para-spinal musculo-ligamentous structures. Marshall returned to the emergency room several days later; a different physician confirmed the diagnosis and prescribed additional pain medication. Marshall also saw an orthopedist *111 in Natchez who did not testify, but who prescribed physical therapy and communicated regularly with Dr. Chenier, Marshall's general practitioner. Dr. Chenier testified in deposition that the duration of Marshall's soft tissue injury was approximately two months. He further stated that Marshall has not consulted him on this complaint since March 1987. However, Marshall testified that he experienced significant residual pain for a period of four to five months after the accident, and that he was unable to return to his normal routine of yard and housework for some six months.
A & P submits that the trial court "virtually quoted" Marshall's petition on the issue of general damages, and we are constrained to agree that the court completely omitted other factors that would militate against the award. Most notably, Marshall was permanently disabled in 1980 as a result of a work-related chest injury and had not worked since that time. His lifestyle was largely sedentary before the accident at A & P. Furthermore, there is no record evidence that Marshall experienced any significant or unusual mental suffering or distress such as would justify the large, separate award for mental anguish. Under the circumstances, we are constrained to conclude that the court abused its discretion in making this award, and find that the highest award possible for this plaintiff and injury is $10,000 for all general damages. The judgment will be amended accordingly.

INTEREST
Relative to the award for medical expenses, A & P notes that Marshall's total drug bill was $503.25; the balance of the $858.99 awarded constitutes finance charges. Defendant argues in assignment number six that, if Marshall is entitled to any damages at all, he should be awarded only legal rather than conventional interest.
Marshall claimed $3,000 in medical expenses plus "legal interest" as an item of damage. The drug store statement was the only medical expense item admitted into evidence and the only such item considered by the trial court. Gary Gunn, pharmacist and part-owner of the drug store, testified at trial that the statement included a service charge of 2% per month, as printed on the document.
A & P claims that the court erred in including the $355.74 in service charges, arguing that La.C.C.P. art. 1921 requires a defendant cast in judgment in a personal injury action to pay only legal interest. We find that this assignment has merit and amend the judgment accordingly.
In the absence of a contractual agreement to the contrary, our law contemplates imposition of legal, not conventional, interest on sums which are the object of a judicial demand. La.C.C. art. 2924B. In the context of conventional obligations, La. Civ.Code art. 2000 provides in pertinent part:
When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by Article 2924. The obligee may recover these damages without having to prove any loss, and whatever loss he may have suffered he can recover no more. (emphasis added)
Moreover, allowing recovery of this finance charge would amount to interest upon interest, a concept not favored by our law. See La.Civ.Code art. 2001; Interstate Trust & Banking Co. v. LaPlace, 156 La. 403, 100 So. 544 (La.1924); Seals v. Morris, 465 So.2d 140 (La.App. 1st Cir. 1985). Ruling on a different issue, this court recently held that "legal interest on the principal amount of the judgment" could be awarded where such interest, though not prayed for, was allowed by statute. Mini Togs Products, Inc. v. Wallace, 513 So.2d 867, 872 (La.App. 2d Cir.), writ denied 515 So.2d 447, 451 (1987) (emphasis added). While the article and cases cited deal with assessment of interest in the context of contracts, the principle of avoiding interest on interest is even more pertinent in the tort context where there *112 was no agreement by A & P to pay Marshall's service charges.
Art. 2000 allows the recovery of legal interest only. The judgment will be amended to reflect the principal amount of the drug bill and legal interest from date of judicial demand.

CONCLUSION
The judgment of the district court is hereby amended to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the plaintiff, Mr. Peter Marshall, Jr., and against the defendant, The Great Atlantic & Pacific Tea Company of Tallulah, for FIVE HUNDRED AND THREE AND 25/100 ($503.25) DOLLARS for actual medical expenses, and TEN THOUSAND AND NO/00 ($10,000.00) DOLLARS for general damages for a total of TEN THOUSAND, FIVE HUNDRED AND THREE AND 25/100 ($10,503.25) DOLLARS, together with legal interest from the date of judicial demand until paid, and all court costs.
Costs of this appeal are to be apportioned equally between Marshall and A & P.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] We note that a subsequent amendment in 1990 applies only to causes of action arising on or after the effective date of the amended act. All references herein are to the statute as originally enacted.
[2] A & P nevertheless argues that Marshall did not make his prima facie case because a "foreign substance," as used in the slip and fall jurisprudence, must mean a "substance of unknown origin to the plaintiff" and Marshall knew exactly what the substance in question was. We decline to follow A & P's strained construction of such familiar words generally understood to mean a substance which a reasonable customer would not expect to be present on the floor.