660 So.2d 167 (1995)
Tommy N. EVANS, Jr., Plaintiff-Appellant,
v.
Lynn J. KILBERT, et al., Defendants-Appellees.
No. 27101-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 1995.
*168 Comegys, Lawrence, Jones, Odom & Spruiell by James W. Davis, Shreveport, for appellant.
Hicks & Hubley by Craig O. Marcotte, Shreveport, for appellees.
Before SEXTON, NORRIS and HIGHTOWER, JJ.
HIGHTOWER, Judge.
In this personal injury case tried before a jury, plaintiff, Tommy N. Evans, Jr., appeals his awards for past and future general damages. Finding no abuse of discretion, we affirm.

Background
On December 29, 1991, Evans stopped on the Spring Street access ramp to I-20 in Shreveport as he waited for the preceding vehicle to enter heavy, interstate highway traffic. Suddenly, Lynn J. Kilbert rear-ended the automobile driven by plaintiff.
Several months later, plaintiff filed suit against Kilbert and her insurer for various soft-tissue injuries sustained in the accident. Following a two-day trial, the jury awarded general damages totaling $7,500 (encompassing $2,500 for past physical pain, suffering, and mental anguish, together with $5,000 for future physical pain, suffering, and mental anguish). Concerning medical expenses, the verdict further provided $1,500 for past outlays (the insurer had previously paid $5,000 toward the $6,500 total) and $2,700 for future costs. These figures, when combined with $270 for other special damages, resulted in an aggregate judgment of $11,970. Thereafter, regarding the issue of quantum, the trial judge denied plaintiff's motion for JNOV, new trial, or additur. This appeal ensued.

Discussion

Quantum
The first two assignments of error challenge, as inadequate, both elements of the general damage award. In such a case, despite Evans's argument that the verdict inconsistently fixes future damages to exceed past damages, the proper question does not require a belaboring of each individual item but, instead, a decision as to whether the total award constitutes an abuse of discretion. See Sledge v. Continental Casualty Co., Inc., 25,770 (La.App. 2d Cir. 06/24/94), 639 So.2d 805.
In assessing damages in cases of offenses, quasi-offenses, and quasi-contracts, much discretion must be left to the judge or jury. LSA-C.C. Art. 2324.1. Before an appellate court may disturb such an award, the record must clearly reveal that the trier of fact abused its broad discretion in making the award, based on the facts and circumstances peculiar to the case and the individual under consideration. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993); Reck v. Stevens, 373 So.2d 498 (La.1979); Sledge, supra; Underwood v. Dunbar, 628 So.2d 211 (La.App. 2d Cir.1993), writ denied, 94-0026 (La. 02/25/94), 632 So.2d 767. In determining whether the jury abused its discretion by making an inadequate award, the evidence must be viewed in the light most favorable to the defendant. Higginbotham v. Ouachita Parish Police Jury, 513 So.2d 537 (La.App. 2d Cir.1987). Of course, upon observing an award below that which reasonably could be assessed, the reviewing court may increase the general damage total to the lowest amount that could appropriately be granted. Youn, supra; Sledge, supra. It is only after an articulated factual analysis discloses such an abuse, however, that guidance from prior awards will become relevant. Youn, supra; Reck, supra; Sledge, supra.
Plaintiff presently pastors an 1,800 member Methodist church in New Orleans, having transferred there from a similarly large congregation in Shreveport in June 1992. Prior to the accident, according to his testimony, he had a healthy, active lifestyle. Not only did he devote 60-65 hours per week to various church activities, some requiring extensive local and out-of-town driving, but he also engaged in a rigorous daily exercise regime and enjoyed golfing, sailing, and camping.
*169 According to Evans, then age 45, the December 1991 rear-end collision rocked him back in his seat, producing a degree of pain. When he arrived at home, his back, neck, and right foot became very sore. His wife then drove him to Schumpert Medical Center, where an emergency room physician took x-rays, dispensed pain medication, and recommended that he see an orthopedist.
The next day, Evans saw Dr. Edward L. Morgan, an orthopedic surgeon. This expert, later presented by the defense, testified that plaintiff complained only of pain in his neck, middle and lower back, and right ankle. A physical examination and review of the hospital x-rays revealed no objective signs of injury but, relying on the patient's subjective complaints, the physician diagnosed a mild to moderate muscular strain of the neck and back, as well as an arthritic condition causing some minor degenerative disc changes. The doctor continued the pain medications, recommended heat and physical therapy, and restricted repetitive bending, lifting, pushing, or pulling. Three days later another clinical examination revealed the same symptoms, prompting a suggestion that plaintiff secure a lumbar support to assist with his frequent driving, and that he return in ten days if necessary. Although Evans never came back,[1] Dr. Morgan expected him to be feeling much better in two to three weeks and on the road to recovery. Despite questions that would later arise concerning the sacroiliac, the orthopedist further testified that his two examinations disclosed no traumatic injuries in that area.
Apparently concerned about the diagnosis of arthritis, Evans next saw Dr. Susan Williams, a rheumatologist and member of his church. Although this physician did not testify at trial, plaintiff stated that she recommended physical therapy, gave him injections, and changed his medication. But, with the doctor being a church member and friend, Evans soon found it difficult to openly discuss various personal problems stemming from his injuries. Consequently, after only three visits, he stopped seeing her.
Upon the recommendation of Dr. Williams and his physical therapist, plaintiff next went to Dr. Craig Springmeyer, another orthopedic surgeon, on January 17, 1992. At that time, Evans complained of neck pain radiating into both shoulders, back pain with the worst manifestations in the lower region, pain radiating into the left groin and down the leg, pain in the left arm, intermittent tingling in all four extremities, periodic numbness in the little and ring fingers of both hands, and ptosis (drooping) of the left eyelid together with difficulty in focusing. Dr. Springmeyer's initial examination revealed that the patient walked with a normal gait, had some mild limitations of neck and back motion, and could not touch his toes, but showed no signs of a significant injury to his sacroiliac. The resulting diagnosis listed a neck and back strain involving the muscles and ligaments supporting the spine. Most of the reported problems resolved by early April, save the lower back pain, and even that had so markedly improved that the physician decided Evans could return to his normal routine, including running and lifting weights. By June 1, 1992, the date of his last office visit before moving to New Orleans, Evans had regained his normal strength, while presenting few complaints and only nonspecific symptoms in the neck and lower back.
Shortly after transferring to New Orleans, plaintiff began seeing Dr. Edna Doyle, a physiatrist[2] who concentrates on sacroiliac disorders. On his first visit in August 1992, although reporting the ptosis resolved, Evans related many of the same ailments he initially disclosed to Dr. Springmeyer. He further complained about persistent low back pain, aggravated by running or walking, and also described discomfort when sitting or standing for lengthy periods. Analyzing these symptoms, and based upon a physical examination and review of the Schumpert x-rays, Dr. Doyle diagnosed a sacroiliac dysfunction. She explained that in part the left sacroiliac joint had locked, causing a stretching of the *170 ligaments attached to the sacrum. The physician theorized that the condition resulted from the collision force transferring up Evans's right leg to his pelvis, when his foot remained on the brake pedal during the accident. Later, at trial, a physical therapist associated with Dr. Springmeyer acknowledged that plaintiff's earlier complaints had been consistent with a soft-tissue injury to the sacroiliac region, but also noted that he had expected Evans to return to his pre-accident level of activity.
Between August and December 1992, Evans visited Dr. Doyle's office several times, disclosing improvement on each occasion, mostly due to physical therapy and use of a left shoe lift designed to strengthen a sacrum tilt. During this period, the physiatrist encouraged exercise but restricted her patient's activities, such as running or horseback riding, which could produce a bumping-like pressure. On May 10, 1993, after an almost six-month absence, plaintiff again saw the doctor to report he had been doing much better. With Evans swimming a half-mile each day for over two months, walking two miles every other day, and experiencing pain only on driving for long periods, the physician decided his condition had essentially resolved. The next visit occurred on September 2, 1993, just six days before Dr. Doyle appeared for a deposition. Plaintiff felt well, had played golf three times, and had gone sailing even though he experienced soreness afterwards.
Despite these optimistic reports, Dr. Doyle indicated the sacroiliac dysfunction would persist indefinitely and exacerbations would occur for the rest of the patient's life. Even more surprisingly, her diagnosis changed dramatically during the approximate two week interval between the deposition and trial. Previously, she deemed the condition generally resolved and even recommended that Evans join a health club. Yet at trial, she assessed a twenty-five percent functional impairment. Further, during her in-court testimony, she firmly recommended an extremely painful course of treatment requiring up to 100 injections of a sugar solution intended to strengthen the sacral ligaments. That exact procedure, she had considered unadvisable less than two weeks earlier. When challenged on cross-examination, the doctor admitted she reversed her opinion eight days before trial, unaided by any further physical examination, when plaintiff described the numerous activities he could no longer pursue.
According to Evans, his physical limitations impeded his performance of important church duties, prevented him from picking up his young daughter, and generally hindered his everyday activities. Even so, no other lay witnesses directly corroborated these assertions. Plaintiff's college-age son stated that his father engaged in a very active lifestyle prior to the accident, but did not comment on his present condition.
During its presentation, the defense called Dr. George Beach, a neurologist who examined Evans about seven weeks after the accident in connection with his left eye problems. At that time, the patient stated that his neck and back pain had resolved, although some muscle soreness remained. Of greater interest, plaintiff telephoned the doctor's office about two and one-half weeks later, complaining that the resulting medical report contained a "slight" error in failing to reflect that he told the physician of continued pain in his lumbar region. Dr. Beach testified that he dictates such correspondence immediately after completing a clinical examination and that, in this particular instance, his notes contained several patient quotations directly supporting the eventual account. He further observed that such objections "send[] up a red flag because it tells [me] that they're more interested in what my report says than my treatment." Indeed, plaintiff probably did not help his cause when he testified on rebuttal that, in requesting the report change, he acted on the recommendation of his lawyer.
Accordingly, upon applying the previously mentioned appellate standards, the record before us does not disclose that the jury abused its discretion in awarding $7,500 for past and future general damages, even if that sum may arguably be on the low side. Evans's primary contention, that the jurors failed to give adequate weight to the conclusions of Dr. Doyle, fails to recognize that *171 reasonable minds may appraise such evidence very differently. Said more directly, after weighing and evaluating the medical and lay testimony, the jury (or judge) may accept or reject any expert's view, even to the point of substituting its own common sense and judgment for that of an expert witness where, in the fact-trier's opinion, such substitution appears warranted by the evidence as a whole. Lloyd v. TG & Y Stores Co., 556 So.2d 629 (La.App. 2d Cir.1990), and authorities therein; see also Bates v. Willis, 613 So.2d 691 (La.App. 5th Cir.1993). Obviously then, neither is a jury required to accept totally a plaintiff's perception concerning the degree and magnitude of his injuries. See Richard v. Dollar General Store, 606 So.2d 831 (La.App. 2d Cir.1992), writ denied, 608 So.2d 197 (La.1992). This is especially true where, as here, to assist in resolving credibility questions, the trier of fact has been afforded a considerable opportunity to observe the claimant's physical condition during the trial.
The jury clearly felt that plaintiff exaggerated his symptoms. Weighing Dr. Doyle's inconsistent impressions against the promising assessments given by the majority of the other medical experts (including the physical therapist), the panel reasonably could conclude that Evans primarily sustained moderate soft-tissue injuries that resolved prior to trial, excluding minor residual effects. Parenthetically, any consideration of comparative awards would reveal similar results. See, e.g., Chambers v. Graybiel, 25,840 (La.App. 2d Cir. 06/22/94), 639 So.2d 361, writ denied, 94-1948 (La. 10/28/94), 644 So.2d 377 (awarding $10,000 in general damages for soft-tissue injury); Graham v. Edwards, 614 So.2d 811 (La.App. 2d Cir.1993), writ denied, 619 So.2d 547 (La.1993) (raising award for minor soft-tissue injury to $3,500); Marshall v. A & P Food Co. of Tallulah, 587 So.2d 103 (La.App. 2d Cir.1991) (lowering an award to $10,000 for all general damages concerning a minor soft tissue injury); Hastings v. Southern Nat. Ins. Co., 554 So.2d 221 (La.App. 2d Cir.1989), writ denied, 559 So.2d 126 (La.1990) (affirming, but terming arguably high, a trial court award of $14,500 in general damages for a severe whiplash injury); Rabalais v. Wal-Mart of Alexandria, 94-24 (La.App. 3d Cir. 06/01/94), 640 So.2d 785, writ denied, 94-1796 (La. 10/14/94), 643 So.2d 164 (declining to lower a $14,000 general damages award for sacroiliac injury); Veal v. Forrest, 543 So.2d 1121 (La. App. 1st Cir.1989) (making $10,000 general damages award for injury involving sacroiliac strain).

JNOV Motion
In his final assignment of error, Evans contends that the district court erred in denying his motion for JNOV on the quantum issue. For a discussion of the parameters applied in making such a determination, see Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La.1991); Sumrall v. Sumrall, 612 So.2d 1010 (La.App. 2d Cir. 1993). Based on the record, we find no error in the trial judge's conclusion that reasonable minds could have reached different conclusions regarding damages. Thus, the complaint is without merit.

Conclusion
For the reasons assigned, the jury verdict and trial court judgment are affirmed at plaintiff's cost.
AFFIRMED.
NORRIS, Judge, dissenting.
I respectfully dissent.
The jury abused its discretion by awarding general damages of only $7,500, a sum which the majority concedes to be "arguably on the low side." In the case of Chambers v. Graybiel, 25840 (La.App. 2d Cir. 6/22/94), 639 So.2d 361, this court awarded $10,000 to the plaintiff in a mild rear-end collision; she sustained a cervical strain, with soft tissue injury lasting some six to eight weeks. In the case of Marshall v. A & P Food Co., 22699 (La.App. 2d Cir. 9/25/91), 587 So.2d 103, this court awarded $10,000 to an elderly slip-and-fall plaintiff who sustained musculo-ligamentous strain to his back and suffered from residual pain for some six months after the accident. Mr. Evans's complaints were more long-lasting and serious than these plaintiffs'.
*172 In view of the duration of Mr. Evans's complaints and the medical testimony, I find the lowest general damage award the court could affirm is $12,500. I would therefore reverse and grant judgment in favor of the plaintiff for $12,500. plus special damages.
NOTES
[1] Evans testified that he attempted to return to Dr. Morgan's office a third time, but found the physician gone on a trip.
[2] A physiatrist is a specialist in physical medicine and rehabilitation.